HAWTHORNE, Justice.
 

 Biaggio Domino brought this suit against' his daughters Josephine and Maria Domino-to rescind a sale by which he had conveyed! to them approximately 153 acres situated: in the Parish of St. Mary, Louisiana, near Morgan City. The first ground on which he-
 
 *1017
 
 relies for rescission is that at the time of the sale he was temporarily deranged and therefore incapable of consent under Article 1789 of the Louisiana Civil Code. In the alternative he pleads error and mistake and, further in the alternative, lesion beyond moiety.
 

 By authentic act on June 30, 1954, plaintiff sold this land to his daughters for $30,000. Of this amount $5,000 was paid in cash and $25,000 was to be paid in five yearly installments of $5,000 each, the credit portion being evidenced by promissory notes. After trial on the merits the district court found that the property had a value at the time of the sale of $165,763.-56 and rendered judgment in favor of plaintiff annulling and rescinding the sale on the ground of lesion beyond moiety, and ordering defendants either to reconvey the property to plaintiff or to pay him the difference between the purported sale price and the value of the property. The trial court found all other grounds urged by plaintiff to be without merit.
 

 Defendants have appealed suspenSively to this court. Plaintiff has answered the appeal praying that the sale be annulled on the grounds rejected by the trial judge or, in the alternative, that the value of the property at the time of the sale be found to be $265,526.67.
 

 On Motion to Remand.
 

 After the appeal was lodged in this court appellants filed a motion to remand for additional evidence on the question of the value of the land by the introduction in evidence of an act of sale of 240 acres made about a year after the case was tried. A remand in the instant case would only prolong this litigation unnecessarily, for there is sufficient evidence in the record, which consists of five volumes of testimony and exhibits, to enable us to decide the case now. Moreover, in our opinion the evidence which movers seek to introduce would not change the result which we have reached in this case. The motion to remand is therefore denied.
 

 On the Merits.
 

 We find no merit in any of plaintiff’s, grounds of attack on the act of sale except that of lesion beyond moiety. Moreover, with a sincerity and honesty which this court appreciates, counsel for plaintiff in argument in this court stated that they had no faith in any of these other grounds.
 

 The district court’s finding of lesion beyond moiety is undoubtedly correct, for the plaintiff has proved beyond question that the purchase price is far less than one-half of the value of the property at the time of the sale. See Arts. 1860-1880, Arts. 2589-2600, La.Civ.Code. The only question for our decision here is the value of the property at the time of the sale — that is, its value on June 30, 1954.
 

 
 *1019
 
 The sale under attack conveyed approximately 153 acres which, for the purposes of this opinion, may be considered as two parcels of land. The first parcel is situated in Sections 42 and 44, Township 16 South, Range 13 East, and contains 149.20 acres. It lies approximately four miles coastal Canal , a main artery of marine 1,366 feet along the south on the Intracoastal canal, a main artery of marine transportation in the South, and is bounded on the north by the Southern Pacific Railroad. U. S. Highway 90, the main thoroughfare into Morgan City, passes through this property. The other parcel is situated in Sections 7 and 8, Township 16 South, Range 13 East, and contains 3.74 acres. It also is east of Morgan City but much nearer than the first parcel, and is located on a parish road or public highway. On this parcel a night club and six cabins are situated. In appraising the property the witnesses appraised Parcel 1 in tracts designated as A, B, C, D, E, F, and G, and Parcel 2 in tracts designated as H and I.
 

 Before we discuss any of these various appraisals, however, it is well to point out that off-shore drilling operations or drilling operations in the coastal area of the Gulf have brought about a rapid increase in the population of Morgan City, which has become one of the principal hubs of the off-shore drilling activities. Due to these activities many incidental and affiliated industries have located in or near Morgan City. As a result of these developments and the rapid growth of this city, real estate values, particularly since 1950, have advanced rapidly or, as some witnesses say, have skyrocketed, especially because land of any kind for industrial and residential sites is very scarce, and in particular there is a great demand for, but a small supply of, property which has access to waterways, highways, and railroad facilities.
 

 In considering this record we are amazed at the difference in the values placed on the property by witnesses for the plaintiff and by those for the defendants. For instance, among plaintiff’s witnesses the smallest value placed on the whole property was, in round figures, $165,000 and the greatest $374,000, while defendants’ witnesses set a minimum value of $42,000 for the whole property and a maximum of approximately $111,000 for only part of the property. This great divergence of opinion may perhaps have arisen because the witnesses had very few sales to guide them in making their appraisals and had to base their opinions of value largely on the suitability of the various tracts for residential and industrial uses.
 

 To establish value defendants relied on the testimony of two witnesses. One of these, a real estate expert and appraiser,
 
 *1021
 
 was not a resident of the Morgan City area. The trial judge tells us that his testimony was “not very satisfactory”, and we do not think any weight should be given to it. This witness, for instance, placed a value on Tract A of $3,400, although this tract both before and after the sale produced a rental of $3,600 a year, an amount larger than the value he placed on this tract. Furthermore, in valuing Tracts A and B he used as a criterion a sale made to Brown & Root, Inc., in 1946, eight years before the sale here under attack and even before the rapid increase of land values in this vicinity. Moreover, he gave little if any consideration to a sale to Tidewater in 1955 which we consider of real evidential worth in an appraisal of Tract B. This 1955 sale was of a small tract 120 feet deep, bounded on three sides by Tract B. This little piece of property, which like Tract B fronts on the Intracoastal Canal, was sold for about $2,000. But Tract B, which has a depth of more than 560 feet, contains 7.47 acres, and was bringing an annual rental of $3,000 at the time of the sale, he appraised at only $13,350! In addition, his appraisal of Tract C was obviously not sound. This tract contains .68 of an acre and has a frontage of 195.3 feet on Highway 90. On this tract there is a frame dwelling — the Domino homesite — with six rooms and bath. From a photograph in the record this house appears to be of modern construction and in good repair. This witness placed no value whatever on this building, and appraised Tract C at $375, although all other witnesses who appraised this tract separately considered that the tract with the improvements had a value of no less than $15,000.
 

 Likewise we are not impressed by defendants’ other witness. He valued Tracts A, B, and C at from $90,000 to $100,000, but hesitated to place any value whatever on Tracts D, E, and F, and said nothing about Tracts H and I. He did state that he would pay $500 to $600 for Tract F (17.25 acres), and that he would give $150 an acre for Tract G, which contains 113 acres. This witness gave practically no explanation of how he arrived at his valuations and admitted at the trial that he was not familiar with all of the Domino property. Under these circumstances we cannot give any weight to his testimony.
 

 It is well settled that the testimony of each witness qualified and accepted as an expert should be given effect if and when it appears to be well grounded from the standpoint of sincerity and good sense. See Housing Authority of New Orleans v. Boudwine, 224 La. 988, 71 So. 2d 541, and authorities there cited. We cannot, however, give effect to the testimony of defendants’ witnesses for the reasons indicated above.
 

 Plaintiff’s witnesses were all well qualified to testify as to the value of the
 
 *1023
 
 property here involved. They were real estate agents and prominent business men who lived in or near Morgan City, some •of whom were engaged in marine operations. Each was familiar with the property. They had had experience in buying and selling land and in opening property for residential subdivisions, and were themselves owners of property in the area. In appraising the various tracts here involved they took into consideration the few other recent sales of similar property in the vicinity, the uses to which various parts of the Domino land were being. put, the particular nature of each tract, its suitability for industrial and residential uses, and the fact that a portion of the property was situated on the Intracoastal Canal which provided a means of water transportation for off-shore oil development.
 

 As we mentioned earlier, there was a wide variance between the highest and the lowest of the valuations placed on the Domino property by plaintiff’s witnesses. However, this difference seems to be mainly in the estimates of Tracts A, B, F, and ‘G, all of which are in that portion of the property we have designated as Parcel 1. As to the other tracts there seems to be no substantial difference in the valuations.
 

 Tracts A and B lie between U. S. Highway 90 and the Intracoastal Canal and are situated in an industrial area. These tracts ■contain 14.27 acres and have a frontage of 1,014.8 feet on Highway 90 and 1,211 feet on the Intracoastal Canal. Three slips, or ship’s berths, on these two tracts afford an excellent marine base for transportation of supplies and material to offshore drilling operations and to other shipping points by water transportation. As stated above, a small piece of land out of Tract B was sold to Tidewater in 1955 for about $2,000, or approximately 20jS per square foot, which, according to appellants’ brief, would figure over $8,000 per acre on an acreage basis. Tract B at the time of the sale here under attack was bringing an annual rental of $3,000, and Tract A some few months after the sale was leased for an annual rental of $3,600.
 

 In appraising these two tracts one group of plaintiff’s witnesses placed a value on them of from $100,000 to $144,000, while the other group, more conservative, placed a valuation of from $57,000 to $75,000 on these two tracts. In view of the wide range in the valuations of these two groups, we do not think that a fair value of these tracts can be determined by averaging their valuations. There is nothing left for us to do but to set a valuation which seems to be fair and reasonable, and we therefore conclude, after considering the evidence and testimony in this case, that these tracts have a value of $60,000.
 

 Tract F contains 17.25 acres and has a frontage on U. S. Highway 90 of 2,565 feet.
 
 *1025
 
 This tract, according to the testimony in the record, is suitable for commercial, industrial, and residential purposes. In appraising this tract one group of the witnesses whose testimony we are here considering placed a value on it of from $54,000 to $100,000. The other group placed a value on it of $25,000, although these witnesses used almost the same factors in determining the valuation of the land. However sincere these witnesses in the higher group may have been as to the valuations placed by them on this tract, due to the wide variance between these groups we cannot accept these highest figures as representing a true value of the property. Again, as we did for Tracts A and B, we must determine the true value of this tract as of the date of the sale, and we find it to be $30,000. It will be observed that we are valuing the land at a few thousand dollars higher than the appraised value given by the lower group.
 

 Tract G is bounded on the south by Tract F, which we have just discussed, and on the north by the Southern Pacific Railroad. According to the record this tract is suitable for residences or subdivisions as well as for industrial sites. As in the tracts discussed above, one group of plaintiff’s witnesses gave a value to this tract of from $56,000 to $96,000, while the other group stated that it had a value of from $25,000 to $34,000. The valuation given by the higher group, in our mind, is somewhat speculative, and we think the true value is found in the estimate of the lower group. Accordingly we have accepted the valuation of $34,000 for this tract.
 

 As we have said, there is no substantial disagreement among plaintiff’s witnesses in the valuations placed on the other tracts. When we substitute the valuations which we have placed on Tracts A, B, F, and G for the widely varying values assigned to these tracts by the witnesses, we find the appraised total valuations of the entire 153 acres to range only from $172,000 to $201,000. This gives an average valuation of $188,833.33, and we accordingly find the value of the land to be this amount on the day of sale.
 

 The trial judge arrived at the market value of this property at the time of the sale by the following method: He listed the valuations placed on the property by plaintiff’s witnesses and found the average of these valuations. He then found the average of the valuations placed on the property by defendants’ witnesses. Next he added the two averages together and divided by two, getting the sum of $165,763.34. The judge cited in support of this method the cases of Hustmyre v. Waters, 186 La. 218, 171 So. 855, and Housing Authority of New Orleans v. Boudwine, 224 La. 988, 71 So.2d 541.
 

 We do not think that the cited cases can be taken as establishing a precedent for a
 
 *1027
 
 method to be followed in all cases where valuation is to be determined. The methods of computation used in those cases were clearly proper under their facts. Such methods of computation would, however, be improper under the facts of the instant case, particularly in view of the fact that we are not giving any weight whatever to the values placed on the property by defendants’ witnesses. Furthermore, before averaging the valuations found by plaintiff’s witnesses we analyzed their testimony and reduced the values placed by them on Tracts A, B, F, and G to what we think were the true values of these particular tracts, thus bringing the witnesses’ valuations of the whole property into fairly close alignment. It was then, and only then, that we arrived at an average valuation.
 

 There is one other significant fact pointed out by the trial judge in his reasons for judgment which, though by no means conclusive, substantiates us in our valuation of the property. This fact is that a small part of the 153-acre property was producing a yearly revenue of $11,057.20 from leases in effect at the time of the sale or within five months afterwards.
 

 For the reasons assigned the judgment appealed from is amended by requiring the defendants to pay, in the event they elect to supplement the price, the sum of $158,-833.33 instead of $135,763.54. In all other respects the judgment is affirmed. Defendants-appellants are to pay all costs.