129 So.2d 35 (1961)
STATE of Louisiana, through the DEPARTMENT OF HIGHWAYS, Plaintiff-Appellee,
v.
Edward L. WALKER et al., Defendants-Appellants.
No. 9463.
Court of Appeal of Louisiana, Second Circuit.
April 12, 1961.
*36 Charles M. Peters, Roy B. Tuck, Jr., Shreveport, for appellants.
W. Crosby Pegues, Jr., D. Ross Banister, Glenn S. Darsey, Braxton B. Croom, Norman L. Sisson, Baton Rouge, for appellee.
Before GLADNEY, AYRES and BOLIN, JJ.
BOLIN, Judge.
In order to construct a highway through the City of Shreveport, it was necessary for the plaintiff to acquire two small parcels of land owned by the defendants. For the sake of brevity, we shall hereafter refer to the property as Parcel No. 1 and Parcel No. 2. Parcel No. 1 is a rectangular lot approximately 10 by 30 feet located in Lot 131 of Bellaire Subdivision, Shreveport, Louisiana. The amount taken by the Highway Department in this parcel was a strip across the entire lot as it fronted on Hearne Avenue. Inasmuch as a garage apartment was partially located on this property, it was necessary that it be also expropriated.
Parcel No. 2 consists of a strip of land approximately 11 by 203 feet across Lots Nos. 83, 84, 85 and 86 of Bellaire Subdivision, as said lots front on Hearne Avenue. A frame residence was located on each of these lots and in the case of the structure located on Lot 85, it was necessary to take the entirety thereof because the highway encroached on same. As to the houses on the remaining lots, it was not necessary to remove them, but they were naturally left approximately 11 feet closer to the street after the taking.
Pursuant to LSA-R.S. 48:441 to 48:460, the plaintiff secured the necessary judgment authorizing it to take possession of the property by depositing in the registry of the court the sum of $14,458, which was the estimated value of the property taken according to the appraisers' estimate. The defendants, not being satisfied with the estimated value of the property, received permission of the court to withdraw the amount so deposited, but filed an answer requesting a judicial determination of the value thereof by a trial on the merits. During the trial in the lower court, the defendants did not contest any portion of plaintiff's claim except value, and the only evidence introduced was relative to the proper award for the property actually taken and the severance, or consequential damage to that remaining. The defendants contended that the appraisal by the plaintiff's experts was inadequate and asked that a total valuation of $40,923.46 be fixed and a judgment rendered accordingly. The court rendered judgment in favor of the plaintiff and fixed the compensation due the defendants as the amount originally estimated by the plaintiff's appraisers, and it is from this judgment that the defendants have appealed.
Inasmuch as the only matter before us is the market value of the property actually expropriated and severance damage to the remainder, it is well to quote some language used by the appellate courts of this state:
"The amount due for private property expropriated for public purpose is its market value when taken * *" (Emphasis supplied.) Louisiana Highway Commission v. Paciera, 1944, 205 La. 784, 18 So.2d 193, 194.
The courts of this state have repeatedly held that "market value" means the price which would be agreed upon at a voluntary sale between an owner willing *37 to sell and a purchaser willing to buy. Housing Authority of New Orleans v. Boudwine, 1954, 224 La. 988, 71 So.2d 541. As said in State of Louisiana, through Department of Highways v. Ragusa, 1958, 234 La. 51, 99 So.2d 20, 21:
"* * * the `true value' of property in expropriation proceedings is the market value or the price which would be agreed upon at a voluntary sale between a willing seller and a willing purchaser, taking into consideration all available uses to which the land might be put, as well as, all factors which lead to a replacement of the loss caused by the taking * *." (Authorities cited.)
The continued use of the term "market value" implies a value that does not consider the value to the individual as such nor the particular needs of either party. We quote the following from Nichols on Eminent Domain, Vol. 4, Section 12:22(2), pp. 44-45:
"So long as there is an ascertainable market value no consideration need be given to value peculiar to the owner. Sentimental value must be ignored. Condemnation proceedings are in rem and just compensation must be based upon the value of the rights taken without regard to the personality of the owner or his personal relationship to the property taken."
Inasmuch as the statute provides that the value of the property taken shall be fixed as of the date of the taking and that damage to the remainder of the property is determined as of the date of the trial, it is crystal clear that there should be two estimates of value:
1. The market value of the property taken, and
2. Another and separate estimate of the damage, if any.
As to the value, the Department of Highways offered the testimony of two professional appraisers, Mr. Lawrence L. May and Mr. O. L. Jordan. These witnesses were shown to be well qualified and experienced in real estate transactions and appraisals. The value placed upon the property by each of them was, in his opinion, its market value, that is, the price which would be agreed upon at a voluntary sale between an owner willing to sell and a purchaser willing to buy. As to Parcel No. 1, the conclusion reached by the two experts for the state can best be summarized by the following testimony of Mr. Jordan:
"A. * * * I took the square-foot area of the entire lot that I considered contributing to the benefit or the income or the ownership of the garage apartment. I divided it and came up with 28¢ per square foot. So, the 1,309 square feet, I had a value, in my opinion, of $367.00. Now, the value of the thirty-foot strip before the taking was considered to have $1,050 value. I deducted the land that was actually within the boundaries of the right-of-way, leaving a remaining value after the taking before the damages of $683.00. Well, taking that ten-foot strip from a thirty-foot lot, in my opinion, would serve as an adverse influence and affected the value to the remaining in the amount of fifty per cent.
"Q. That is a severance damage? A. That is the severance damage. So, I applied fifty per cent damages to the remaining land value, which amounted to $324.00. The improvements were valued at $3,600, land taken, $367.00, damages, $342.00; a total of $4,310 for the entire taking."
As to the value of Parcel No. 2, this same witness testified as follows:
"A. All right. Municipal No. 3414 Hearne Avenue being a single-family cottage located on Lot 86 at the corner of Kingshighway and Hearne Avenue, was valued at $7,324 before the taking; $6,710 after the taking; a total compensation *38 of $614.00. The next improvement being the one that has been removed, Municipal No. 3410, 3412 Hearne Avenue, located on Lot 85, was value (sic) at $8,159.00 before the taking; $503.00 for the remaining land after the taking; total compensation, $7,656. The third improvement northward from Kingshighway being 3403 and 3406 Hearne Avenue located on Lot 84, was valued at $9,567 before the taking; $8,185 after the taking; compensation, including land and damages, $1,382. And, then, the fourth improvement, being a duplex having municipal No. 3400, 3402 Hearne Avenue, located on Lot 83, was valued at $8,934 before the taking; $1,003 after the taking; or a total compensation of $7,931. And this is the house that was valued as to have been taken due to the fact the right-of-way encroached across the edge of one of the front porches. Now, inspection since the improvement is completed reveals that some changes evidently were made, because the house is there. It appears that the side-walk is about four feet from the house, so I think that that would be a proper adjustment to apply compensation for the land taken and damages in lieu of the entire building. This would result in a revised valuation as follows on 3400, 3402 Hearne Aveune; value after the taking, $8,438; land and damagesland taken and damages to the remaining$496. That would give you an overall valuation of these properties that are affected as a result of the taking in the manner proposed, as follows: Valuation before the taking for all four improvements, $33,984; value after the taking, $23,823; total compensation, $10,161."
In contrast to the two experts offered by the plaintiff, defendants presented Mr. Theodore D. Raushack and Robert F. Oldham. As to their testimony, we quote the following from the trial judge's written reasons for judgment:
"The defendant has presented two witnesses, one of themthe effect of the testimony of one witness adds absolutely nothing to this case. One witness testified that this property, rental property, how has no value whatsoever for the reason that, he said, the taking of the front yard, or a portion of the front yard in front of the remaining residences along Hearne Avenue, constitutes a prohibited use because of the existence of a building code in the City of Shreveport. That building code is not in the record. The building code is not in evidence. There is nothing in the record on which this Court can base a determination that these structures constitute any kind of abuse in connection with the building code. With that deficiency, and the basis for that appraiser's figures not being supported in the record, there can be no weight given to his testimony, because his testimony did not attempt to place a value on the property taken. His testimony had to do with the salvage value of these buildings, which he claimed to have now no market value because they constitute a prohibited use under the existing building code in the City of Shreveport.
"The other witness gave estimates of value on the property taken. And, because of the location of the traffic artery, the value that he found on each remaining dwelling was reduced by the figure of fifty per cent, which he says in his opinion, due to his experience in the real estate business, makes these properties worth half as much now as they were before the taking.
"Certainly, with no more support than that, the expert witnesses presented by the defendant cannot be accepted. * * *"
In essence, the defendants urge the trial judge committed the following reversible errors:
*39 1. In failing to accord proper weight to the testimony and written appraisement of defendants' witnesses.
2. In basing his award for damages upon a highly nebulous and legally unacceptable formula used by the plaintiff's experts, rather than upon the method approved by the jurisprudence of this state.
After a careful study of this record, we are unable to agree with the above contentions made by the defendants. As previously stated, the only question presented herein is whether the lower court correctly fixed the value of the property expropriated, together with any severance damage to the remainder. We feel that this is purely a factual matter, and the trier of facts must necessarily be allowed much discretion in such matters. In this connection, we find the following quotation from the case of State of Louisiana, through Department of Highways v. Hub Realty Company, 1960, 239 La. 154, 118 So.2d 364, 368:
"* * * The rule here is that the testimony of each expert should be given effect if that testimony appears to be well reasoned and sincere. However, if the expert testimony impresses the court unfavorably, it will be disregarded." (Emphasis added.) Citing Housing Authority of New Orleans v. Boudwine, supra; Domino v. Domino, 233 La. 1014, 99 So.2d 328; State v. Grand Consistory, etc., 237 La. 1005, 112 So.2d 692, and others.
We are likewise not convinced that the award of the district court was based entirely upon the so-called "Gardner Formula" which defendants contend was an illegal and complicated method of estimating the proximity or severance damages. To the contrary, we feel that the following quotation from the opinion of the lower court correctly gives the basis for such judgment:
"Certainly, with no more support than that, the expert witnesses presented by the defendant cannot be accepted, since there is nothing in the record to contradict the formula presented for the determination of approximate damages, which I might say is not patently unfair, but may not be accurate.
"The only alternative left for the Court is to find an amount fixed by the appraisers for the State. To do otherwise, the Court would have to reach into the air and produce a figure, because there is no estimate presented by the defendant that would contradict this portion of the suit that has been seriously contested."
Having found no manifest error in the judgment below, it is accordingly affirmed at appellants' cost.
Affirmed.