GLADNEY, Judge.
This expropriation suit, instituted on May 4, 1959, involves property of the defendants located in the Village of Sarepta, Webster Parish, Louisiana. A deposit of $11,455 the asserted value of the property *126 expropriated, was made, and respondents answered asking that the value of the property, together with severance damages, be fixed at $37,500. After trial, judgment was rendered fixing defendants’ compensation at the sum of $18,374, subject to a credit for the amount previously deposited. From this decree the plaintiff has appealed.
The taking is for highway purposes under authority of Section 19.1 of Article VI of the Constitution of Louisiana, LSA, and LSA-R.S. 48:441-48:460. The property so affected includes portions of Lots 4, 5, 6, 7, 10, 11, 12 and 13 of Block 2 and portions of Lots 2, 3, and 4 of Block 3 of the W. E. Allen Subdivision, with improvements consisting of a one-story frame residence containing six rooms and one bath, an attached frame commercial building used as a small grocery, a garage, a barn, three septic tanks and tile disposal field, a water well, a pump house, and 1,270 lineal feet of barbed wire fencing. The record is replete with photographs of the residence, store building, garage and barn. The controversy requires this court’s consideration of the market value of the property expropriated, together with severance damage sustained by the portion of the property not taken.
Plaintiff, Department of Highways, complains the trial court erred: in accepting the evaluations of witnesses who were not qualified as experts and whose opinions were not based on sound reasons or facts; in rendering a judgment predicated on replacement costs of improvements without due allowance for depreciation; and . in rendering a judgment which failed to give consideration to the testimony of all expert witnesses, including those of appellant.
The appellate courts of this state have reiterated the rule that the proper measure of compensation to be awarded the owner in expropriation proceedings is the price which would be agreed upon at a voluntary sale between an owner willing to sell and a purchaser willing to buy. The price so determined is commonly known as the market value of the property. Moreover, the courts have recognized that the best indicia of market values are recent sales of comparable property. However, where there have been no sales of similar property in the vicinity of the property sought to be expropriated, in order to determine the true value of the property taken, the courts must look to other circumstances and means of ascertaining value. Replacement cost, less depreciation, is a method that may be employed where the result is indicative of the price the property would bring on the market at the time of the expropriation. In all cases arising under the statute an owner who contends the value of the expropriated property is in excess of the estimate and deposit of the expropriating agency has the burden of proving his claim by convincing evidence. LSA-R.S. 48:453.
We have had occasion in several instances to inquire into the qualifications of witnesses presented for the purpose of testifying to property values. In some of those cases, appellant has, as in the case at bar, complained that witnesses tendered on behalf of the property owners were not properly qualified as expert appraisers, and that the trial court erred in basing its judgment on such testimony. The charges herein are directed at Robert Slack, who is a farmer and property owner in the immediate vicinity of the subject property and who also is a builder on a small scale and who makes loans on property in the vicinity; Jesse L. Boucher, a builder and vendor of homes, and perhaps the largest builder of homes in Webster Parish; Ed Schultz, an executive of the Springhill Bank, who testified he does eighty per cent of the appraisals for the bank and is, therefore, required to do extensive appraisement work throughout the parish, including the immediate vicinity of the subject property; and E. J. Smith, a licensed real estate broker, who has bought and sold property in and about the Town of Sarep-ta, and who previously has qualified in *127 court proceedings as an expert appraiser. Plaintiff relied on the testimony of W. L. Hunter from Shreveport, a qualified appraiser, whose opinions were concurred in by Walter M. Mangham, an employee of plaintiff, who accompanied Hunter when the latter investigated the property under consideration.
Counsel for appellant earnestly argues defendants’ experts did not assign any substantial basis for their conclusions. It is true that these witnesses did not utilize the market data approach - by employing comparable sales in the vicinity, nor did they rest their conclusions upon a cost less depreciation approach nor on any of the theoretical formulas sometimes employed. Nonetheless, the testimony of these witnesses discloses they carefully inspected the property, observed its condition and state of repair, its location and access to highways, compared it with property in the immediate vicinity, and then drew on their knowledge and experience in arriving at a decision of the worth of the property. The approach may be called the “common sense approach” or in the case of Mr. Shultz, “the conservative banker’s approach”, which, it must be conceded, are practical methods that have not been accorded technical denomination. We confess, moreover, that in endeavoring to ascertain the market value of the property so taken, consisting of portions of eleven lots in the small town of Sarepta, we are persuaded these witnesses by reason of their experience arid familiarity with trading and loans in the general area of the subject property, are enabled to reach a closer estimation of value than plaintiff’s technical expert who has had no particular experience with market values in Sarepta.
We have studied the cost less depreciation calculations of Hunter and reject his resolution of the depreciation to be deducted from the improvements on the property. Rooks testified, and such testimony was not controverted, that he remodeled and reconditioned his residence and the adjoining store building some two or three years prior to the date of the taking, the expenditures totaling between $8,000 and $10,000. Numerous photographs show the apparent excellent condition inside and outside of the house and store, and of the garage. Hunter’s assignment of a depreciation factor of 43% for the house and 50% for the store.is, in our opinion, entirely unrealistic as to the property’s economic life. In State of Louisiana Through Department of Highways v. Barber, 1959, 238 La. 587, 115 So.2d 864, 866-867, Justice Viosca was faced with similar evidence concerning a cost less depreciation approach. He made the following comment:
“These experts broke down their thirty percent depreciation into about ten percent for ‘physical’ depreciation, and twenty or twenty-five percent for ‘economic’ depreciation, and ‘functional’ depreciation. They have not explained to our satisfaction how they arrived at a twenty or twenty-five percent economic and functional depreciation of these improvements which were approximately six years old. The dwelling was air-conditioned throughout, modern in every particular, and well located as far as schools, churches, shopping centers and public transportation are concerned. There is nothing in the record to indicate any change in conditions in the neighborhood or any other circumstances which would justify such.a high rate of economic or functional depreciation. If we eliminate this item and confine the depreciation to the ten percent for physical depreciation, we would arrive at a total value of $18,246, using the other figures supplied by these experts, which is an amount in excess of that awarded by the court of appeal.”
As is customary in expropriation cases in this state, appraisals of the land and the improvements were separately made, and severance damages were attached to the *128 sum of these values for the purpose of estimating the owner’s total loss. The following values were assigned by the several witnesses to the land taken:
Slack -$5,000.00
Smith- 4,750.00
Boucher- 5,000.00
Shultz- 3,500.00
Hunter- 1,465.00
Hunter appraised the lots on an acreage basis, computing the expropriated portion to be .739 acres, which he also translated into a square footage basis. Counsel for appellant argues five comparables referred to by Hunter indicate a value of from .0345^ per square foot or $2.26 per front foot, to .0459^ per square foot, or $7.84 per front foot, and that plaintiff’s witness was therefore liberal in predicating his valuation on ,0459(S per square foot, which is $2,000 per acre, or $1,465 for the land condemned. No explanation is given for appraising town lots on an acreage basis.
By way of summary, the testimony indicates the following values as to the improvements taken:
Residence Store Garage Well Barn
Hunter $8,613.00 $3,672.00 $ 836.00 $550.00 $250.00
Slack 8,536.00 3,605.00 850.00 425.00 150.00
Smith 9,000.00 3,500.00 1,250.00 500.00 200.00
Boucher 9,850.00 3,500.00 400.00 4Ó0.00 450.00
Shultz 7,550.00 4,600.00 1,000.00 450.00 500.00
Counsel for appellant earnestly insists that the testimony of Slack, Smith, Boucher and Shultz as above reflected, should be rejected in toto or adjusted to show depreciation. The record shows that except in the instance of one witness the foregoing values by defendants’ witnesses do not purport to represent replacement cost less depreciation but are expressions of the worth of the property for purposes of sale as it existed when' taken. Stated somewhat differently the witnesses sought to determine a price for which the property could sell as a unit. In a number of states the market value of improved property sought to be expropriated may not be legally determined by combining separate land and improvement values, but must be appraised as a unit. Louisiana, on the other hand, accords approval to the method whereby separate appraisals of the lot and the improvements are added. Comments from authorities relating to the two methods of evaluation for expropriation purposes are set forth in an annotation appearing in 1 A.L.R.2d 878.
The opinions of Hunter and of the witnesses for defendants are irreconcilable, and it is our opinion that the assignment of depreciation at 43% on the house and 50% on the store building is unrealistic and unacceptable. For reasons stated, the trial judge accepted the testimony of Shultz, the banker, as being conservative and a more true representation of the market value of the property taken. After accepting Shultz’ valuation of the land and improvements thereon as being proper, the court added thereto the severance damage to the remainder of the property as found by appellant’s witness, Hunter. We approve of the findings of the judge a quo and consider them reasonable and fair.
Counsel for appellant makes reference to Domino v. Domino, 1957, 233 La. 1014, 99 So.2d 328 and Town of Slaughter v. Appleby, 1958, 235 La. 324, 103 So.2d 461, where the Supreme Court rejected the testimony of expert witnesses who did not support their conclusions with basic *129 reasons. These authorities are inapposite. The record, in our opinion, reflects the basic factors which influenced the opinions of which complained. Furthermore, the conclusions of appellant’s expert were unsatisfactory, both as to comparable sales relied upon in order to fix an acreage valuation, and as to the utilization of acreage and unrealistic depreciation factors. We feel justified in stating that Shultz and other witnesses expressed opinions which were well fortified by experience and knowledge of values in the locality where the property was taken.
For the reasons hereinabove stated, the judgment from which appealed is affirmed at appellant’s cost.