HERGET, Judge.
The State of Louisiana through the Department of Highways expropriated for highway purposes certain property of Bruce E. Bourgeois, Defendant, located in the Village of Brusly, Parish of West Baton Rouge, Louisiana, consisting of a lot measuring 60 feet front by a depth of 120 feet situated on the corner of Brusly Lane and fronting on Louisiana Highway #1, together with improvements, a combination store and residence; the former containing an area of 1980 square feet and the latter 12,085 square feet and a garage containing approximately 241 square feet. After the trial on the merits, the trial Court awarded Defendant $30,350 for the property, from which judgment Plaintiff prosecutes this appeal.
The issues presented for our review are the determination of the value of the property expropriated and the method utilized in arriving at that value.
On the trial of the case over the strenuous objection of counsel for the Department, Defendant offered a letter addressed to him dated May 26, 1959 from the Department of Highways signed by Francis X. Vinet, Right of Way Attorney, wherein he said:
“ * * * The properties which the Department must acquire to accommodate the construction of the project have been appraised by competent and independent appraisers and based on these ■appraisals the Department does now make to you a firm and final offer to purchase the property required from you for the following consideration, to-wit:
“PARCEL NO. 6-3:
“LAND.-.... $ 1,000.00
“IMPROVEMENTS ... 25,950.00”
In his answer Defendant admitted the sum of $25,950 was a fair, reasonable and just compensation for the improvements on the property being expropriated but maintained that the value of the land was $7,500 and thus Defendant should be compensated in the sum of $33,450 for the whole of the property expropriated.
In its written .reasons for judgment the trial Court awarded $30,350 as the value of *644 the property, allocating $25,950 for the improvements and $4,400 for the land.
The basis for the Department’s objection to the method of the trial Court in evaluating the improvements separate and apart from the real estate on which they are located is the decision of the Supreme Court in the case of Texas Pac.-Missouri Pac. Terminal R. of New Orleans v. Rouprich, 166 La. 352, 117 So. 276, wherein Chief Justice O’Niell said:
“If we should add to what it would cost to rebuild the residence the value which the two lots would have if they were vacant, the result would be approximately the amount which the jury of freeholders has allowed. But that is not always — if, in fact, it ever is — a fair method of calculating the value of improved property. The question is, not what the house and lots would be worth separately, but what they are worth as they are. In estimating the value of improved real estate, the court has to deal with a condition — not a theory. From the smallness of the rental which the tenant pays for occupying the property, we assume that it is not worth what it would cost to buy the lots, if they were vacant, and rebuild the house. It is evident that the property is not worth as much as an investment as it would be to one who would occupy it as a .residence. No one would buy this property as an investment at the price which the jury of freeholders has allowed for it.”
Respondent maintains the courts of this State have approved the method whereby separate appraisals of the land and improvements are added together to arrive at a total value of the property expropriated and cites as authority State Through Dept. of Highways v. Rooks, La.App., 131 So.2d 125 and the authorities cited in 1 A.L.R.2d 878. In the Rooks case, at page 126, the Court said:
“The appellate courts of this state have reiterated the rule that the proper measure of compensation to be awarded the owner in expropriation proceedings is the price which would be agreed upon at a voluntary sale between an owner willing to sell and a purchaser willing to buy. The price so determined is commonly known as the market value of the property. Moreover, the courts have recognized that the best indicia of market values are' recent sales of comparable property. However, where there have been no sales of similar property in the vicinity of the property sought to be expropriated, in order to determine the true value of the property taken, the courts must look to other circumstances and means of ascertaining value. Replacement cost, less depreciation, is a method that may be employed where the result is indicative of the price the property would bring on the market at the time of the expropriation. In all cases arising under the statute an owner who contends the value of the expropriated property is in excess of the estimate and deposit of the expropriating agency has the burden of proving his claim by convincing evidence. LSA-R.S. 48:453.”
And at page 128:
“ * * * In a number of states the market value of improved property sought to be expropriated may not be legally determined by combining separate land and improvement values, but must be appraised as a unit. Louisiana, on the other hand, accords approval to the method whereby separate appraisals of the lot and the improvements are added. Comments from authorities relating to the two methods of evaluation for expropriation purposes are set forth in an annotation appearing in 1 A.L.R. 2d 878.”
Though the Rooks and Rouprich opinions appear to be irreconcilable, the methods adopted in the two cases are distinguished by Justice McCaleb as the organ of the Supreme Court in City of New Orleans v. *645 Noto, 217 La. 657, 47 So.2d 36 at page 37, where the Court held:
“In addition, defendants tendered an architect who testified that the replacement costs of the buildings located on the land would be $4,314 and it is here contended that this amount should be added to the admitted value of the lots and employed as the determinative factor establishing the true value of the property.
“The argument is without support. It is well settled that the measure of compensation to be awarded an owner of property in expropriation proceedings is the market value — that is, a price which would be agreed upon at a voluntary sale between a willing seller and purchaser, see Housing Authority of Shreveport v. Green, 200 La. 463, 8 So.2d 295; Housing Authority of New Orleans v. Persson, 203 La. 255, 13 So.2d 853 and Louisiana Highway Commission v. Israel, 205 La. 669, 17 So.2d 914 and that replacement cost is not 'a fair method of calculating the value of improved property.' Texas Pacific-Missouri Pacific Terminal R. v. Rouprich, 166 La. 352, 117 So. 276, 277.
“It may be that, in cases where there have been no sales of similar property in the vicinity of that sought to be expropriated and market value is thus not readily ascertainable, other circumstances and factors must be explored in order to discover the true value — but this case presents no such difficulty because the city produced evidence of numerous purchases made by it of neighboring property, which this court has stated ‘is perhaps the best criterion of the value * * *’. Texas Pacific-Missouri Pacific Terminal R. R. v. Dittmar, 161 La. 444, 108 So. 877.”
Thus, in Louisiana the law is well settled in determining the value of property expropriated for public purposes the best criterion in arriving at the market value thereof — which has been determined to be what a willing buyer would pay to a willing seller for the property — is an examination of voluntary sales of property comparable to that of the property expropriated. In the event there are no such comparable sales, evidence of a different nature is admissible if it may be utilized to indicate the value of the property to be expropriated. Accordingly, in the instant case the evidence of the replacement cost, less depreciation, as to the improvements was admissible and the sole question is the weight to be accorded to such testimony. Though counsel far the Department strenuously objects to the appraisal of the land and improvements separately, it is apparent by the letter in evidence from the Department to the Defendant, quoted from supra, the Department used this very procedure to arrive at the value of the subject property.
The Defendant’s expert appraisers maintain there were no comparable sales by which the market value of the property expropriated could be arrived at and their appraisals of the land were based upon their opinions giving consideration to their knowledge of the value of property in the area. The expert witnesses of the Department offered sales of properties which they believed to be comparables. An examination of the said sales reveals that large acreages were involved with relatively little highway frontages; whereas the value of the property expropriated is greatly enhanced because of its location, by the fact it all fronts on the highway and obviously sales of the larger properties do not give a comparable fair indication of the value of property, all of which fronts on the highway.
Inasmuch as the evidence offered in this case discloses there were no comparable sales by which the value of the property expropriated could be ascertained, we accept, as does the Defendant, $25,950 as representing a fair sum to be awarded for the improvements on the property and we are in complete accord with the well considered written reasons of Honorable G. Ross *646 Kearney, Jr., Trial Judge, determining the value of the raw land and quote with approval and adopt as our own his written reasons for judgment:
“Evidence was introduced on the trial of this cause by both Plaintiff and Defendant, Plaintiff having introduced evidence of several sales of property in the vicinity, which it contended were comparable sales; however, the majority of the alleged comparable sales, in the opinion of the Court, were not comparable sales, but were sales of large tracts of land. The only comparable sale, in the opinion of the Court, was a sale of a lot; in 1953, in the vicinity of the lot expropriated. This was some ■ seven years prior to the expropriation proceedings and, in view of the growth of the community in which the lot expropriated is situated, since 1953, it is the opinion of the Court that this sale cannot be used to establish value of the lot.
“The Defendant produced the following named expert witnesses, who testified as to the value of the lot on the date of expropriation. Mr. Irvin Mouch, President of the Bank of West Baton Rouge, testified that the lot, in his opinion, is worth the sum of Three Thousand, Seven Hundred Fifty and no/100 ($3,750.00) Dollars; Mr. Elmer Bernard, who deals in Real Estate and Insurance, valued the lot between Four Thousand ($4,000.00) Dollars and Five Thousand ($5,000.00) Dollars, on the date of expropriation proceedings; Mr. DiBenneditto, who deals in Real Estate, valued the lot at Five Thousand ($5,000.00) Dollars and Mr. Hebert, who deals in the sale of building materials and construction of homes and sale of homes, valued the lot at the sum of Four Thousand, Five Hundred and no/100 ($4,500.00) Dollars.
“The Plaintiff’s witnesses, Mr. William J. Fort and Mr. Kermit Williams, valued the lot of ground at the sum of One Thousand and no/100 ($1,000.00) Dollars. Both witnesses admitted that neither had done much appraisal work in the vicinity where the lot expropriated is located. On the other hand, the Defendant’s witnesses all reside in the locality where the lot is situated, and according to the testimony in this case are well qualified to value the lot sought to be expropriated.
“There are numerous ways of determining the market value of property and the sale of similar or comparable property in the vicinity is only one item to take into consideration in arriving at such value. Here, the record contains no satisfactory evidence of sales of land comparable to that involved. Hence,- ascertainment of the true or intrinsic value must be sought by the consideration of other factors and circumstances. In this connection, we know of no better way of determining such value than from the expert opinions of those people who have dealt with real estate and reside in the vicinity of lot of ground being expropriated. (See [State Through] Department of Highways vs. C. L. Givens, Sr., et al., 129 So.2d Series 468.)
“Considering the facts in this case, it is the opinion of the Court that a fair and just compensation to the owner of the subject property in this case would be the sum and amount of Thirty Thousand Three Hundred Fifty and no/100 ($30,350.00) Dollars, to cover the value of the said property expropriated herein the sum of Twenty-five Thousand Nine Hundred Fifty and no/100 ($25,950.00) Dollars for the improvements and the sum of Four Thousand Four Hundred and no/100 ($4,-400.00) Dollars together with interest at the rate of five (5) per centum per annum on the sum of Three Thousand Four Hundred and no/100 ($3,400.00) from Feb. 16, 1960, until paid and all costs.
*647 “It is the further opinion of this Court that there should be judgment in favor of the Defendant and against the Plaintiff reserving to Defendant in perpetuity all of the oil, gas and other minerals in or under said tract and all of the oil, gas and other minerals that may be extracted from said tract and any and all royalties on any and all such oil, gas and other minerals;
Affirmed.