BAILES, Judge Pro Tern.
This is an expropriation suit. The sole issue before the court is the amount due defendant landowner as just compensation.
A consent judgment was rendered by the trial court ordering the property expropriated and title was transferred to plaintiff upon deposit of the amount of the trial court judgment in the registry of the court. The court a quo fixed the value of the 33.25 acres expropriated at the sum of $152,950. Being dissatisfied with the amount of the award, the defendant appealed. We affirm.
The plaintiff answered the appeal seeking a reduction in the award to $141,300, this being the amount its two appraisers testified the property was worth.
The defendant insists that there were three errors committed by the trial court, the details of which are:
I. The district court erred in according any weight to the appraisal made by plaintiff’s experts;
II.The district court erred in not accepting the opinion of defendant’s three appraisers of value of subject property; and
III.The district court erred in not fixing the amount of just compensation at the sum of $180,000.
On July 16, 1972, Gully & Associates, Inc. (Gully), in the exercise of its option thereon, purchased a tract of 133.25 acres of land located adjacent to and north of Bayou Manchac and west of and contiguous to Airline Highway in East Baton *829 Rouge Parish for the price of $3,200 per acre. On the same date, Gully sold the south 100 acres of this tract to the Baton Rouge Jaycees for the sum of $3,500 per acre. This is the tract of land utilized by the Jaycees for their “State Fair” fairgrounds.
Sometime prior to June 30, 1972, Gully put together a partnership involving nine investors or individuals, plus Gully. The name of this partnership was named Gully & Associates Partnership No. 5, d/b/a Airline Property (Gully Partnership). Gully Partnership bought from Gully the remaining 33.25 acres of the above described 133.25 acre tract for the consideration of $3,520 per acre. The date of this sale was June 30, 1972.
Plaintiff, interested in establishing a park in this area, sought the purchase of the subject property from Gully Partnership. Failing to agree on a sale price, this suit was filed for its expropriation.
At the trial of this suit, the plaintiff offered the expert testimony of Mr. William F. Cobb and his father, Mr. Leroy Cobb, who had made a joint appraisal of its market value. It was their opinion that the subject property had a market value at the time of the trial of $4,250 per acre. These two appraisers testified that the sale from Gully to Gully Partnership fixed the market value at the time of the sale on June 30, 1972. Shortly thereafter these experts appraised the property and fixed a market value of $3,750 per acre.
On cross-examination Mr. William F. Cobb explained the increase in value from $3,750 to $4,250 was due to the difference in time between its acquisition by defendant and February 8, 1974 (the date of the trial), the consideration of the sale from Gully to Gully Partnership as an arm’s length transaction, plus the price fixed for comparable land across Airline Highway as represented by sales of two separate tracts. Both appraisers for the plaintiff testified that they utilized no other sales in the general area for the reason that none of the other sales were comparable and that the sale of the identical or subject property was the best comparable available. It was their opinion that as the subject property was sold on June 30, 1972, this fixed the market value at that time, and that to find its value at the time of the expropriation all that was needed was an upward adjustment to compensate for the increase in value because of the development of the adjacent property by the Jaycees, the elapse of time, the favorable financing which had been arranged by Gully, and the consideration of the ten per cent profit override of Gully and the six per cent sales commission to be paid Gully whenever the property was sold.
Mr. William F. Cobb testified he did not consider the sales relied on by defendant’s experts as comparable. It was the opinion or the judgment of the plaintiff’s experts that these stated factors justified an increase in value between June 30, 1972, and the date of the trial of $17,000.
Defendant offered the testimony of three appraisers, all of whom were qualified and accepted by the trial court as experts. These were Karl J. Synder, Verdie Reese Perkins and Julius A. Bahlinger, III. In arriving at their respective trial date market values they utilized the market data approach as gathered from comparable prior sales of property within a radius of 3.4 miles of the subject property.
Mr. Synder testified that he inspected the property by driving by it and walking over as much of it as possible. He found the property to be 80 per cent open land and 20 per cent wooded. It was zoned rural by the East Baton Rouge Parish Planning Commission. There was a frontage of 1234.85 feet on the southwesterly side of Airline Highway with a varied depth to the center line of Ward’s Creek. It is located seven miles southeast of 1-12 Airline Highway interchange outside the corporate limits of Baton Rouge. The public utilities serving this property include electricity, natural gas and telephone. It was his opinion that the highest and best use was *830 highway commercial. The neighborhood pattern is tending to small tracts of two acres and up for commercial and light manufacturing business operations. It was also his opinion that the market was progressing in this particular area of Airline Highway.
This witness described the transactions he used in arriving at his appraised value as including:
1. The sale from Prejean to Toomer of 29.36 acres on April 17, 1969, zoned rural, on the south side of Pecue Lane 3.4 miles north of subject property for a consideration of $7,500 per acre. This property had a frontage of 1973 feet on Airline Highway and a frontage on Pecue Lane, a gravelled road;
2. The sale from Sachse, et al to Davis on December 31, 1969, of 33.3 acres for a consideration of $5,500 per acre. It was zoned rural. This property had a frontage of 289.8 feet on Airline Highway and on Pecue Lane of 1503.65 feet;
3. The sale of 3.6 acies across Airline Highway from subject property from Hester, et al to Knox on April 19, 1971, for a price of $5,139 per acre, or a front footage price of $61.67;
4. The sale from Hymel, et al to Bag-well Coating on July 2, 1972, of 2.5 acres for $10,000 per acre. This property had a frontage of 152.28 feet by a depth of over 700 feet. This price equalled $164.17 per front foot, and was located 2.4 miles north of subject property;
5. The Johnson to Matthews-Mc-Cracken sale of 1.8 acres with a frontage of 261 feet across the highway from the Jaycee property. The consideration was $20,000 or a front footage price of $66.63 per foot;
6. A tract of land 2.5 miles north of subject property containing 3.9 acres for a consideration of $11,509 per acre or $99.40 per front foot; and
7.The sale from Hester to Louisiana Sheet Metal and Roofing of 1.8 acres, zoned rural, located across the highway from subject property for a consideration of $20,000. The frontage was 261 feet on Airline Highway with a consideration of $76.63 per foot.
In addition to these seven sales located in East Baton Rouge Parish, Mr. Synder considered three sales south of Bayou Manchac in Ascension Parish. These sales included:
1. The sale from Commercial, Inc., to American Federation of Independent Unions, Inc., of 1.5 acres on April 13, 1972, with a front of 166.8 feet 1.2 miles south of subject property for $10,000 per acre or $89.90 per front foot;
2. The sale from Watts to Durward Gully of 8.95 acres (date of sale not shown) 1.9 miles south of subject property having a front of 419.16 feet on Airline Highway and 424 feet on Old Jefferson Highway .for $6,145 per acre; and
3. The sale from Lindley, et al to Spring on February 23, 1972, of 33.956 acres 2.2 miles south of subject property with a frontage of 1202.53 on Airline Highway for a consideration of $3,445 per acre or $97.28 per front foot.
In response to interrogation relative to his consideration of the sale from Gully to Baton Rouge Jaycees, Mr. Synder testified that using the Gully-Jaycee sale as a base his comparison of the two tracts as to topography, elevation and size, he would consider subject property to be worth $4,500 per acre by assigning the stated consideration of $3,500 per acre to the Jaycee property as of June, 1972.
Further, Mr. Synder testified that on the basis of his comparing the subject property with the Prejean-Toomer, Sachse-Davis and Lindley, et al-Spring sales, all of equal size and location, it was his conclusion and opinion that the subject property was worth $5,125 per acre.
*831 Mr. Verdie Reese Perkins testified in his opinion the highest and best use of the property would be for investment purposes and for highway commercial use. It was his conclusion that Gully reserved the best 33.25 acres from the tract when it made the sale to the Baton Rouge Jaycees. He stated for comparative purposes he relied on the Gully-Jaycees sale, the two sales across Airline Highway from subject property, the Prejean-Toomer and Sachse-Dav-is sales. He found the subject property was in a pattern of growth between Nesser overpass and Bayou Manchac which had been developing rapidly within the two years prior to trial. Solely on the basis of the front footage between the Jaycee tract and subject tract, the subject tract had a value of $4,670 per acre, however, by a broader comparison tested in the light of the comparables above set forth, it was his opinion that the involved tract had a value of $5,000 per acre for commercial use.
Mr. Julius A. Bahlinger, III, testified that he used the same comparables as detailed by Mr. Synder with an additional transaction. In his consideration he added the Baringer-Mallett sale of August 24, 1973, of 64.187 acres located on the Barin-ger-Foreman road south and west of the Klienpeter Dairy. This property sold for $192,567. He found this property to be fairly close to subject property with a frontage of 2258 feet on the said road. It was his opinion that by adjusting this property for size and topography, the defendant’s tract of land had a value of $5,000 per acre. Additionally, Mr. Bahlin-ger testified that on the basis of usable area ratio of 52 assigned to the Jaycee tract and subject tract an assigned value of 64, and by dividing 64 by 52, the comparative factor is 1.23 which means, on this basis, subject tract had a value of $4,690 per acre; that solely by overall comparison between the two tracts subject property had a value of between $4,300 and $4,600 per acre. Between these two indicators Mr. Bahlinger selected the value of $4,500 per acre as of June, 1972.
In conclusion this expert appraiser testified that by adjusting for difference in size and time (to which he assigned a value of 10 for each factor) for a 120 per cent factor multiplied by $4,500 (value as of June, 1972) the time of trial value was $5,400 per acre.
The trial court dictated his reasons for judgment into the record at the conclusion of the trial. We quote his reasons, in part, as follows:
“Now, gentlemen, it is our duty to decide, based on all of this evidence, what would be a fair value for the property on the date it was taken by the plaintiff, i. e., February 6, 1974. Considering the purchase price, the sale, the adjoining sales, all of the comparables, and the passage of time, we have concluded that the fair market value of the property on the date of taking was $4,600.00 per acre. This allows for an increase in value between the time that the comparable sales were made and the time of the taking in this case, and further allows for all of the other factors which we think are pertinent in reaching a decision. We have not attmepted (sic) to say that the reasoning of one appraiser is more logical or proper than that of any other. Frankly, we have picked and chosen portions of the evidence, without regard to appraisal source, in an attempt to reach a decision which we think would reflect the fair market value of the property at the time of taking. We are not relating our result to any particular real estate appraiser’s testimony.”
It is well imbedded in our jurisprudence that the owner of property taken through involuntary or expropriation procedures must be paid the market value of his property so taken. In determining what market value of any given property is, the court must be guided by certain well established principles. The most accepted method of fixing market value is the con *832 sideration of sales of similar or comparable property in the neighborhood.
In the often quoted case of State of Louisiana through Department of Highways v. Hub Realty Company, Inc., 239 La. 154, 118 So.2d 364 (1960), the Supreme Court laid down this guideline:
“ [2] In expropriation suits the measure of compensation to be awarded for the property taken is the market value of that property — that is, the price which would be agreed upon at a voluntary sale between an owner willing to sell and a purchaser willing to buy. Most important in determining this market value are sales of similar or comparable properties in the neighborhood. If evidence of similar sales is not available, the value of the land expropriated must be determined by other means, generally the testimony of experts. The rule here is that the testimony of each expert should be given effect if that testimony appears to be well reasoned and sincere. However, if the expert testimony impresses the court unfavorably, it will be disregarded. Housing Authority of New Orleans v. Boudwine, 224 La. 988, 71 So.2d 541; Domino v. Domino, 233 La. 1014, 99 So. 2d 328; State v. Grand Consistory, 237 La. 1005, 112 So.2d 692.”
This court, in the case of State of Louisiana through Department of Highways v. Spillman, 276 So.2d 905 (1973), said:
“[1, 2] In an expropriation proceeding, the landowner is entitled to the market value of the property taken calculated upon its best and highest use. Market value is the price paid as between a willing and informed buyer and a willing and informed seller in the ordinary course of business.”
The defendant argues that the sale of subject property from Gully to Gully Partnership was not an arm’s length transaction, that the consideration of the sale did not represent the true value of the property and therefore could not be considered as fixing market value at that time. The trial court made a specific finding that the said sale was not an arm’s length transaction, and thereby we are convinced this transaction did not influence the trial judge in his determination. Even though the trial judge made this specific finding, the defendant further argues that the trial judge stated in his reasons “ * * * we have picked and chosen portions of the evidence, without regard to appraisal source, in an attempt to reach a decision which we think will reflect the fair market value of the property at the time of the taking. We are not relating our result to any particular real estate appraiser’s testimony” demonstrates that he committed reversible or manifest error because of the repudiated comparable used by both of plaintiff’s appraisers. There might be merit to defendant’s argument if it were true that plaintiff’s expert appraisers relied solely on the repudiated comparable. However, we find both of the appraisers for plaintiff made other findings which they testified influenced their consideration of value. These included the appreciation of value because of time, improvements put on the adjoining property by the Jaycees and the fact that subject property was of higher quality than the adjoining Jaycee property. Additionally, they considered the sale price of the two properties immediately across Airline Highway from subject property. Obviously, plaintiff’s experts took into consideration these other factors because of their finding that market value was $4,250, thus reflecting an upward adjustment of $530 per acre from the $3,520 per acre consideration stated in the Gully to Gully Partnership sale.
All of the experts assigned practically the same highest and best use of commercial and/or light industrial to the subject property.
The defendant’s three experts testified that they considered the Gully to Gully Partnership sale but gave it little weight in their findings of value. None of them *833 considered the sale as an arm’s length transaction because of the involvement of Mr. Durward Gully in both the sale and the purchase. Mr. Gully testified that it was not representative of market value because he wanted the persons who had invested in the transaction to realize a profit.
From our perusal of the record, we are unable to discover any manifest error in the judgment of the trial court.
For the foregoing reasons, the judgment appealed is affirmed. Defendant is cast for all costs of this appeal.
Affirmed.