LABORDE, Judge.
Plaintiff, Roy Edwards Ledet, filed suit to rescind the sale of a 350 cubic inch displacement (cid) high performance engine against its manufacturer/vendor, James E. Roy d/b/a Sunn Performance. Mr. Ledet also requested consequential damages and attorney fees, based on the fact that the defendant was the manufacturer of the engine. The trial court rendered judgment against the plaintiff and he now appeals that decision. We reverse.
FACTS
Roy Edwards Ledet purchased a Camero Z-28 automobile in 1984. In January of 1985, Mr. Ledet brought the car to James E. Roy d/b/a Sunn Performance for de-computerization of its engine. Shortly thereafter, the engine incurred major damage necessitating its replacement. Mr. Le-det returned to Mr. Roy’s shop and requested that the damaged engine be replaced with a 350 cid high performance engine that was blueprinted and balanced.[1] This engine was also to include the transmission. Mr. Roy represented that he could build and sell Mr. Ledet an engine with the exact specifications Mr. Ledet required. The agreed price for the work was $3,400.00, which Mr. Ledet paid in full on February 18, 1985. Soon after taking delivery of the car, Mr. Ledet experienced problems with the shifter and with black smoke coming from the engine. The automobile was taken back to Mr. Roy’s shop several times, but the problems were never satisfactorily corrected.
In August or September of 1985, the transmission failed on Mr. Ledet’s vehicle. The car was inoperative until December 26, 1985, when Mr. Ledet had the transmission repaired at AAA Transmission. On January 19, 1986, the engine of the vehicle caught on fire. The car lay idle until May 21, 1986, when Mr. Ledet took it to Steve’s Automotive and Transmission shop for an examination of the fire damage. At that time, the owner, Steve Benoit, informed Mr. Ledet that the car did not possess a high performance, blueprinted and balanced engine, but, rather, that it contained a used stock engine. Subsequently, Mr. Ledet contracted with Mr. Benoit for a 350 cid high performance engine, blueprinted and balanced. The agreed price on the work was $4,358.38, of which, Mr. Ledet has only paid a $900.00 deposit. Mr. Ledet has also had body work performed on the car, as a result of the fire, at the cost of $2,000.00.
LAW
The plaintiff filed suit in redhibition to recover the purchase price of the engine based on the fact that the engine he received from the defendant was a used stock engine and not the high performance, blueprinted and balanced engine for which he contracted. The trial court found the witnesses for both sides to be knowledgeable and credible. It concluded that the defendant provided the plaintiff with an engine possessing all the qualities that the plaintiff requested, and that the defendant did not perform the faulty work which caused the fire. From this ruling, the plaintiff makes two assignments of error: 1) That *107 the trial court committed manifest error when it found that the plaintiff had failed to establish any element of his claims; and 2) That the trial court lacked sufficient understanding of the case to make a ruling. We agree with the plaintiffs first assignment of error and find it unnecessary to address his second.
We find that the trial court committed manifest error in that its decision is contrary to the law and evidence in this case. The plaintiffs case was built primarily around the testimony of his expert witness, Steve Benoit. In its Reasons for Ruling, the trial court found Mr. Benoit to be “very impressive”, and that “his knowledge of automobiles, and his whole field of expertise, was outstanding.” We agree with this assessment.[2] As an expert witness, Mr. Benoit’s testimony should be given effect if it is well-grounded from the standpoint of sincerity and good sense. Domino v. Domino, 233 La. 1014, 99 So.2d 328 (La.1957). We find that to be the case here.
Mr. Benoit testified that the engine he found in the plaintiffs car did not possess any of the qualities that the defendant represented it would have. Mr. Ledet specifically requested that the engine be a 350 cid high performance engine, with all new internal parts, that was blueprinted and balanced. Mr. Benoit first stated that the internal parts were not new and were extremely worn. He estimated that they had 70,000 miles of wear on them, whereas the car had only been driven 400 miles during the six months prior to his inspection. Mr. Benoit also testified that, except for the cam, none of the parts were high performance parts. High performance parts, according to Mr. Benoit, are stock base parts which have been altered to produce greater performance qualities. Mr. Benoit did not consider the engine sold by the defendant to be a high performance engine; rather, he labeled it a “used stock engine.”
There was also extensive testimony by Mr. Benoit concerning the absence of blueprinting and balancing in the engine. Blueprinting was never clearly defined, but apparently it is a procedure in which the engine is mapped. Balancing, on the other hand, was clearly defined, and according to the plaintiffs expert, it is a process in which all the reciprocating parts are brought into balance so that there is no external vibration from the engine. Mr. Benoit testified that this process can only be accomplished through the use of a $20,-000 machine, and that there are no such machines in Lafayette, i.e. the location of the defendant’s shop. The defendant and his witnesses, none of whom were qualified as experts, disputed Mr. Benoit’s testimony in regard to balancing. The defendant admitted that he did not possess a balancing machine, but claimed that the parts he used were pre-balanced from the factory. Mr. Benoit stated that these pre-balanced parts do not constitute a balanced engine as that term is used in the industry. We find Mr. Benoit’s testimony on this matter to be persuasive. Thus, we conclude that the plaintiff did not receive a high performance engine, with new internal parts, that was blueprinted and balanced.
The .plaintiff contends that he should be entitled to a refund of the purchase price under the Civil Code’s redhibition articles. We agree. Article 2547 provides:
“A declaration made by the seller, that the thing sold possesses some quality which he knows it. does not possess, comes within the definition of fraud, and ought to be judged according to the rules laid down on the subject, under the title: Of Conventional Obligations.
It may, according to the circumstances, give rise to the redhibition, or to a reduction of price, and to damages, including reasonable attorneys’ fees, in favor of the buyer.”
In Sale Electric Supply, Inc. v. Emco, Inc., 385 So.2d 873 (La.App. 2d Cir.1980), the court applied this article to a manufacturer. The court held that where a manufacturer represents to a buyer that its *108 product will meet certain performance requirements and the product does not in fact meet those requirements, the manufacturer will be presumed to have known that the representations were untrue. Applying the logic of Sale, we find that since the defendant represented that the engine would meet certain performance requirements, and since it did not meet these requirements, the defendant is liable for the purchase price. See Aetna Insurance Co. v. General Electric Co., 362 So.2d 1186 (La.App. 4th Cir.), writ denied, 365 So.2d 247 (La.1978); Peoples Furniture and Gift v. Carson Hicks/Friedrichs Refrigeration, Inc., 326 So.2d 919 (La.App. 3d Cir.1976).
The defendant urges several defenses, all of which lack merit. The defendant first alleges that between the time he installed the engine and the time Mr. Benoit inspected it, someone surreptitiously substituted an inferior engine for the one he sold the plaintiff. The defendant offered no proof to support this allegation, and several of the plaintiffs witnesses testified that they saw the car on a daily basis and that no changes were made. Furthermore, the plaintiff offered the testimony of two expert witnesses who stated that due to the dust accumulation on the engine bolts, they could tell that the engine had not been taken out of the car. We agree with the plaintiffs witnesses that the engine had not been changed.
The defendant also asserts that under Civil Code Article 2533, he is not liable for the purchase price because the engine was destroyed in the fire before the plaintiff instituted this suit. This article provides, in pertinent part, that:
“If it has perished by a fortuitous event, before the purchaser has instituted his redhibitory action, the loss must be borne by him....”
However, we feel that the preceding article, LSA-C.C. art. 2532, controls in this case. This article states:
“If the thing affected with the vices has perished through the badness of its quality, the seller must sustain the loss.”
Mr. Benoit isolated the cause of the fire to be the negligent installation of a fuel line and pump. We are not persuaded by the defendant’s contention that the malfunctioning fuel pump was a substitute for the one he installed, as the defendant has offered no credible evidence to support this claim. Thus, since the defendant negligently installed the fuel line and pump he must sustain the loss.
In addition to a refund of the purchase price, the plaintiff requests consequential damages and attorney fees. Civil Code Article 2547 permits damages and attorney fees to be awarded in cases such as this. We conclude that the plaintiff is neither entitled to compensation for the repair bill from Steve’s Automotive and Transmission, nor is he entitled to regain the $684.00 for repair and replacement of the shifter, as both these costs should be covered by the refund of the purchase price. Additionally, our review of the record indicates that the plaintiff has not proved the necessity or the value of the storage expenses for the automobile. We do, however, award the plaintiff the return of the purchase price of $3,400.00 and the $2,000.00 bill for body work on the car, which should bring the plaintiff to a position of status quo ante. We also fix attorney fees at $3,000.00. See Vercher v. Ford Motor Co., 527 So.2d 995 (La.App. 3d Cir.1988).
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment in favor of plaintiff, Roy Edwards Ledet, and against defendant, James E. Roy d/b/a Sunn Performance, for the sum of $5,400.00, plus attorneys fees of $3,000.00, together with legal interest from the date of judicial demand until paid. Defendant is cast for all costs at the trial level and at the appellate level.
REVERSED AND RENDERED.

. High performance, blueprinted and balanced are terms which relate to certain qualities of an engine. They will be discussed more fully later in the opinion.

. After careful review of the record, we reject defendant’s argument that Mr. Benoit’s testimony was affected by any alleged financial interest in the outcome of the case.