BOWES, Judge.
Defendants, USF & G and Harmony Construction Company, Inc. (hereinafter “USF & G”), appeal from a judgment of the trial court which held that plaintiff was entitled to worker’s compensation benefits, including death benefits, funeral expenses and medical expenses, and to penalties and attorney’s fees for USF & G’s failure to pay same. We reverse.
FACTS
The original plaintiff in this matter was Mariano Quinones (hereinafter “Qui-nones”). On September 4, 1985, while in the course and scope of his employment, Mariano was injured when a large board fell off a scaffold above his head and struck his left leg. His foot was severely injured in the accident and he began collecting worker’s compensation benefits. His leg did not heal properly after the accident and he underwent a skin graft with unsuccessful results. He never returned to work, but he was paid weekly compensation benefits, and his accident related medical expenses were also paid, up until his death.
On May 6, 1987, Mariano was admitted to East Jefferson Hospital after he went to the emergency room. His foot was black and swollen and he could not move it. He died the next day. The cause of death was stated as adult respiratory distress syndrome as a result of cirrhosis of the liver.
Subsequent to Mariano’s death, his wife, Rita Quinones, was substituted as plaintiff in this suit. After several continuances of trial, the parties agreed to submit the matter on several depositions and medical records. The trial judge accepted this agreement, took the matter under advisement and rendered judgment in favor of plaintiff.
ANALYSIS
Defendant argues that the trial court erred in finding that Mrs. Quinones was entitled to worker compensation benefits to Mariano’s death and that she was entitled to attorney fees and penalties for their failure to pay same.
The dependents of an employee are entitled to receive benefits for an injury arising in the course and scope of his employment which resulted in the death of the employee. LSA-R.S. 23:1031; LSA-R.S. 23:1231. The plaintiffs bear the burden of establishing, or proving, by a reasonable preponderance of the evidence, a causal relationship between the employment accident and the death. Hammond v. Fidelity *126 & Cas. Co. of New York, 419 So.2d 829 (La.1982). This the plaintiffs failed to do.
Mrs. Rita Quinones, decedent’s wife, testified via deposition that her husband’s foot never healed after the 1985 accident and that he underwent skin grafts to no avail.
On May 6, 1987, the day before he died, she called her neighbor to take him to the emergency room. Mrs. Quinones stated that his foot “was already dead. He couldn’t even move it. I have to be pushing the foot, and then he moves one and I push the other.” They went to East Jefferson Hospital, where emergency personnel “put something to his nose and they start pulling out blood.” Mariano died the next day.
Mrs. Quinones also stated that her husband suffered a lot of pain and took prescription strength Tylenol. As to his drinking habits, she stated that he drank 1-3 drinks, usually Bacardi Rum before going to sleep. Attached to her deposition was a medical report which indicated that Mariano was treated for alcoholism as far back as 1982, prior to the work-related accident. However, when questioned, Mrs. Quinones denied that he had ever been an alcoholic and she also denied that he drank two to three fifths of vodka per week as stated in the medical reports.
Betty Roy, in her deposition, testified that she lived next door to the Quinones from 1984 until Mr. Quinones’s death. She gave Mariano rides to his physicians and hospitals from the date of his accident until his death.
Her testimony, based only on her observation as a lay person, was that Mariano was as “healthy as a horse” before the accident. She stated that he did not drink to excess; and, until his accident, he worked steadily. She also said that he did not stumble when he walked, he did not curse and he was a very gentle man.
Over the course of the two years between the accident and Mariano’s death, Ms. Roy stated that she observed his foot becoming swollen and black. This condition eventually traveled up to his knee. Despite the skin grafts, his foot never healed. He had a “hole” that went to the bone she said. She spoke to Mariano’s physicians and stated that one doctor told her that a vein was “nicked” during a skin graft, another said he was missing a major vein in his leg.
On May 6, 1987, Mrs. Quinones asked Ms. Roy to take Mariano to the hospital. Ms. Roy said that Mariano “looked” like he was dying and that at the hospital, the personnel pumped “black” blood out of his body, prior to his death the next day.
In his deposition, Dr. Steve Nelson, an expert in the area of critical care, pulmonary medicine and internal medicine, a witness for defendant, and the only expert witness to testify, stated that he reviewed the records of Mariano’s hospital stay on May 6-7, the date of death. These records indicated that Mariano was an alcoholic who drank 2-3 fifths of vodka each week. It was his opinion that Mariano suffered from an underlying alcohol-related liver disease which affected his abdomen and esophagus, causing him to bleed internally. Because of the liver condition, his blood did not coagulate. In addition, Mariano had an infection and was septic; however, the source of the infection was not located but it was established, in the medical reports of the admitting nurse and the physicians, that there was no infection in his leg at the site of his injury. The official cause of death in the medical reports was that Mariano died from adult respiratory distress syndrome as a result of Laennec’s (or alcoholic) cirrhosis, or scarring of the liver. On cross-examination, Dr. Nelson admitted that massive doses of acetaminophen (the active ingredient in the pain killer Tylenol), especially in conjunction with Vitamin C, could cause cirrhosis, or scarring of the liver. However, the dosage needed to cause cirrhosis was far in excess of that which Mariano took for pain, which was six to eight tablets per day. Dr. Nelson stated that, based on the evidence before him, the 1985 injury was completely unrelated to Mariano’s death.
Plaintiff offered no expert testimony or medical evidence of any kind to contradict *127 Dr. Nelson’s testimony which is the only expert or medical testimony in the record. Not one single doctor testified for plaintiff. Instead, plaintiff’s only evidence and only attempt at carrying her burden of “proving by a reasonable preponderance of the evidence” that Mariano’s death was work related was her own lay testimony and the lay testimony of Betty Roy, a close friend and next door neighbor concerning her own alleged observations and opinions regarding Mariano’s condition and her contention, also from mere observations, that he was not an alcoholic. This testimony fails to establish in any medical or logical fashion the actual cause of Mariano’s death or the fact that alcoholism was a great and underlying contributing factor to his death.
After a careful review, we hold that plaintiff has completely failed to establish, by a preponderance of the evidence, a causal relationship between Mariano’s work-related accident and his death, and that no reasonable trier of fact could have concluded otherwise. In accordance with this finding, we hold that the trial judge was manifestly erroneous and clearly wrong in ruling that the cause of Mariano’s death was work related and, that as a result, Mrs. Quinones was entitled to worker’s compensation benefits.
Likewise, because Mrs. Quinones is not entitled to receive worker’s compensation benefits she is also not entitled to attorney’s fees and penalties for USF & G’s failure to pay these benefits. Accordingly, we hold that the trial court erred in assessing attorney’s fees and penalties against USF & G.
In addition, USF & G alleges that the trial court erred in ruling that Dr. Nelson’s testimony on direct examination was hearsay when his testimony on cross-examination and the medical records upon which he based his testimony were allowed into evidence.
As we noted earlier, Dr. Nelson’s entire deposition was placed into evidence in lieu of his live testimony. During the direct examination, counsel for USF & G asked Dr. Nelson whether “the nurse’s records, or any of the tests or remarks (in the medical records) made by the physicians [who attended Mr. Quinones during his last illness] reflect any indication that his leg injury was somehow involved in this last illness and in his death?”
Plaintiff’s counsel objected, alleging that the physicians themselves would be the appropriate parties to testify as to their opinion on the cause of Mariano’s death. It is the hearsay objection to this evidence that was sustained by the trial judge in his reasons for judgment, and not an objection to the hospital records or to Dr. Nelson’s direct testimony; and we find no error in this ruling. Certainly, Dr. Nelson, as an expert medical witness, is entitled to give his opinion regarding the contents written in the medical records he examined. LSA-C.E. art. 702.
After reviewing the testimony and considering the trial judge’s reasons, for his judgment, it appears that the trial judge actually considered Dr. Nelson’s testimony on both direct and cross-examination, as well as the data included in the reports relied on by Dr. Nelson, and that he considered inadmissible Dr. Nelson’s testimony only as to the opinions of the treating physicians — and not Dr. Nelson’s testimony on direct examination, as alleged by defendant/appellant. In light of the fact that the trial court apparently did consider all the evidence before him, including the entire deposition of Dr. Nelson, any error in his ruling which sustained the hearsay objection is harmless.
Plaintiff/appellee also alleges that the trial court erred in ruling that plaintiff was prejudiced by USF & G’s defense of alcoholism which was raised for the first time after Mr. Quinones’ death. A careful reading of the trial judge’s reasons indicate that the trial court was only stating that the deceased could not defend himself against the charge of alcoholism made after his death. We find no reversible error in this reasoning of the trial court. However, we also note that, as pointed out by counsel for USF & G in his brief, that alcoholism only became an issue in the case after Mariano’s death when the cause of *128 death was listed in the medical reports and on his death certificate as end stage liver disease secondary to his alcoholism.
However, although we find that the evi-dentiary rulings made in plaintiff’s favor, which are the subject of USF & G’s complaints are not in error, we still conclude that plaintiff did not bear her burden of proving, by a preponderance of the evidence, that Mariano’s death was caused by his 1985 work-related injury.
For the above discussed reasons, the judgment of the trial court in favor of Mrs. Rita Quinones is reversed in its entirety and we hereby enter judgment in favor of USF & G dismissing Mrs. Quinones’ suit at her cost.
REVERSED AND RENDERED.