650 So.2d 774 (1995)
Larry D. HURST
v.
ST. ANTHONY NURSING HOME, et al.
No. 94-CA-664.
Court of Appeal of Louisiana, Fifth Circuit.
January 18, 1995.
*775 Nicolas Estiverne, Nicolas Estiverne & Associates, New Orleans, for plaintiff/appellant.
Michael L. McAlpine, Timothy P. Kirkpatrick, McAlpine, Peuler, Cozad & Davie, New Orleans, for defendants/appellees.
Before KLIEBERT, GOTHARD and CANNELLA, JJ.
GOTHARD, Judge.
Claimant, Larry Hurst, brings this appeal from a decision of the Office of Workers' Compensation, in which the hearing officer denied a claim for benefits. We affirm.
According to testimony given at the hearing, Larry Hurst began employment with St. Anthony's Nursing Home, a center which provides care for elderly patients, on September 13, 1989. Stipulations established that the claimant was earning $5.45 per hour for an average of $243.88 per week.
On December 6, 1991, while performing his duties as a nursing assistant supervisor, Mr. Hurst noticed a paralyzed patient seated, unattended in a wheelchair. The patient began to fall forward and Mr. Hurst rushed forward to break her fall. He was successful in catching the patient and placing her on the bed. He testified that he "snapped" his back. He felt "a hot flashing" and was unable to move momentarily. The pain went away shortly thereafter. Mr. Hurst reported the incident to his supervisor and continued his duties.
Mr. Hurst also testified that after the incident his back became sore and worsened in the next few days. On December 8, 1991 he went to Charity Hospital seeking treatment for his injured back. Emergency room doctors at Charity examined Mr. Hurst and conducted diagnostic X-rays. According to Mr. Hurst's testimony, the doctors diagnosed his problem as muscle spasms and ordered two weeks bed rest. Mr. Hurst stated that the doctor gave him a "slip" for his supervisor verifying those facts. He stated that he called St. Anthony's and one of the nursing assistants came to pick up the "slip".
Mr. Hurst testified that he went to the emergency room at Charity Hospital several times after the December 8th visit, and was eventually referred to an orthopedist. Mr. Hurst began physical therapy, but was unable to complete it because the pain in his back was too intense.
In February, 1992, Mr. Hurst consulted a chiropractor, but that treatment proved unsuccessful also. In April of 1992 Mr. Hurst returned to Charity Hospital and was referred to the spinal clinic. After a series of diagnostic tests, the claimant underwent surgery in June, 1992. The claimant testified that he has received no workers' compensation benefits.
The record contains the claimant's medical record from Charity Hospital which indicates that the claimant suffers from Sickle Cell Disease and has abused drugs. When confronted *776 with the record of drug abuse on cross-examination, Mr. Hurst, who was thirty-seven years old at the time of trial, admitted that he "smoked cocaine on cigarettes" as a juvenile, but denied any use of illegal drugs since that time. He further testified that hospital records indicating that he was admitted to Charity Hospital in August, 1981 for treatment of intravenous drug abuse were incorrect. Mr. Hurst maintained that it was his twin brother, falsely identifying himself as the claimant, who actually received the detoxification treatment.
Sholeh Miri, assistant administrator of St. Anthony's, testified that time cards indicated the claimant worked on December 6, 7, 8, 9, 12, 13, 14, 17, and 18, 1991. Ms. Miri testified that Mr. Hurst did not return to work after December 18, 1991 and she assumed that he quit, although there is nothing in Mr. Hurst's employee file to indicate the reason for the termination of his employment. Ms. Miri also stated that the employee file contained no medical records.
Dr. Fritz G. Fidele, the chiropractor who treated the claimant, testified that he first treated Mr. Hurst on February 3, 1992 for complaints of pain in the lower back and abdomen. Fifteen treatments were conducted for about one month. However, because his condition continued to deteriorate, Mr. Hurst decided to discontinue chiropractic treatment and return to Charity Hospital.
The record also contains the deposition of Dr. Mitchell Harris, an orthopedic surgeon who performed surgery on Mr. Hurst. In that deposition, Dr. Harris stated that Mr. Hurst was a young man in his thirties who complained of back pain which he attributed to an injury sustained at work. Dr. Harris explained that diagnosis was difficult despite numerous blood tests, X-rays and two attempts at a percutaneous directed biopsy. Ultimately, a surgical biopsy was performed in June of 1993. Dr. Harris explained that diagnosis had been difficult because, although there were abnormal appearing X-rays, the laboratory studies were normal. The MRI was suggestive of infection, the source of which can normally be identified and treated with antibiotics. However, in Mr. Hurst's case the specific bacteria could never be isolated.
Even after the surgery no definitive diagnosis was made. However, Dr. Harris testified that the illness was in no way related to the accident at St. Anthony's. Dr. Harris explained that the illness was not of a post-traumatic nature. Specifically Dr. Harris testified that:
"My concerns were infection, vascular problems or even potentially a tumor. My particular area of interest in the spine is spine trauma. I would have loved this to have been a work-related traumatic injury, because I certainly would have felt a lot more comfortable treating it without having to go to the surgeon to try to find a diagnosis. But this was clearly not something that would be from an injury at work."
Dr. Harris explained further that the condition was not degenerative. It was likely caused by an infection of unknown origin. He stated:
"He had three vertebral bodies and two inner disc spaces involved with some process that was progressive in nature, and over the course of the year and a half that I was treating him, he showed radiographic evidence of change, that things were getting progressively more involved, and that's not the normal course of the degenerative condition."
Dr. Harris did state that a history of intravenous drug abuse would lend further support to the possibility that there is an infection.
The defense offered testimony from Dr. James Laborde, an expert in orthopedic surgery. Dr. Laborde stated that he had reviewed the claimant's medical records from both Charity Hospital and Dr. Harris. He concurred with Dr. Harris' opinion that an infection caused the illness and further opined that hepatitis and intravenous drug abuse as well as sickle cell disease were the most likely contributing factors in the development of the infection.
Based on the testimony and documentary evidence offered at trial the hearing officer *777 denied Mr. Hurst's claims for Workers' Compensation Benefits.
The injured employee bears the initial burden of "establishing the causal connection between the disability and the employment accident by a reasonable preponderance of the evidence". Quinones v. U.S. Fidelity and Guar. Co., 630 So.2d 1303, 1307 (La.1994); Hammond v. Fidelity & Cas. Co. of N.Y., 419 So.2d 829, 831 (La.1982); Prim v. City of Shreveport, 297 So.2d 421, 422 (La.1974). The exact cause of the disability need not be proven, but the claimant must demonstrate the causal relationship between the accident and the disability. To demonstrate this causal relationship and create a presumption that the accident caused the disability, an employee can prove that:
before the accident the injured person was in good health, but commencing with the accident the symptoms of the disabling condition appear and continuously manifest themselves afterwards, proving that there is sufficient medical evidence to show there to be a reasonable possibility of causal connection between the accident and the disabling condition.
Quinones v. U.S. Fidelity and Guar. Co., supra at 1307; Walton v. Normandy Village Homes Association, Inc., 475 So.2d 320, 324 (La.1985).
If an injured employee can successfully carry this initial burden, a presumption of a causal relationship is established and the burden shifts to the defendant. At this point the party denying the existence of a presumed fact assumes both the burden of producing evidence and the burden of persuasion on the issue. This presumption is not rebutted by the mere introduction of contrary testimony, it requires more. Quinones v. U.S. Fidelity and Guar. Co., supra; Walton v. Normandy Village Homes Association, Inc., supra at 325.
We find that the claimant did not carry the initial burden. The only testimony to establish the causal connection was that of the claimant. The medical testimony, even that offered by the treating physician, contradicts the claimant's assertion that the disability was caused by an accident at work. Under these circumstances we cannot find error in the trial court's finding of fact. Consequently, the judgment of the trial court is affirmed.
AFFIRMED.