laCANNELLA, Judge.
Plaintiff, William Lafrance, appeals from a judgment dismissing his claim for workers compensation benefits. We affirm.
For five years before the alleged accident, plaintiff delivered torque convertors[1] for defendant, Custom Built Torque Convertors, his brother, Joe Lafrance’s company.[2] On June 19, 1995, in the course and scope of his employment, plaintiffs vehicle was rear-ended. He contends that the driver of the other car pushed him into the intersection, rocking him back and forth. Plaintiff exited his car and went to speak to the other driver. She did not want the accident reported. Plaintiff wrote her name and license number down. As he went to get back into his car, she drove away. Plaintiff did not |3call the police, but reported it to his insurer, State Farm Insurance Company (State Farm). It was eventually determined that the driver of the other car gave plaintiff a false name. However, her identity was traced by State Farm through the license number. Plaintiff filed suit against the other driver and she denied that any accident took place.
After the incident, plaintiff told various people, including his brother and his sister-in-law, Blondie Lafrance, about the accident. Blondie Lafrance is the secretary and co-owner of Joe Lafrance’s two companies. Plaintiff did not complain about being hurt or being in pain to anyone with whom he spoke, except his wife. According to Blondie and Joe Lafrance, when asked plaintiff denied being injured.
Plaintiff continued with his work duties both that day and for the following two weeks. Those duties included making two or three deliveries per day, which required loading and unloading 10 to 15 converters per day. The converters weigh between 25 and 55 pounds, with the average being 25 to 35 pounds. However, plaintiff did not always handle the converters alone. At times, the other workers either at the shop or at the delivery stops loaded or unloaded the equipment. Plaintiff had other duties when he was not delivering converters. He helped around the shop with general work and cut the grass. Plaintiff was also responsible for feeding the watch dogs on the premises.
On June 30, 1995, plaintiff got into an argument with another worker. Because of his conduct, Joe Lafrance fired him.
On July 5, 1995, plaintiff filed a workers compensation claim. Twenty-one days after the accident, five days after he was fired on July 10, 1995, he first sought medical treatment for pain in his neck and back at ^Leonard Chabert Medical Center, a charity hospital in Houma, Louisiana. He alleged that the neck and back pain was caused by the accident on June 19, 1995. The matter was tried on August 21, 1996 and taken under advisement. On September 17, 1996 the hearing officer rendered judgment that the injury was not caused by the accident and dismissed plaintiffs claim.
On appeal, plaintiff contends that the hearing officer erred in finding that he did not sustain a disabling injury as a result of the accident and in failing to award compensa *1029 tion, medical expenses and penalties and attorney fees for defendant’s arbitrary and capricious failure to pay workers’ compensation benefits.
The evidence shows that plaintiff had no prior neck and back problems during the five years preceding the accident and never missed work. Following the accident, he testified that he did not seek medical attention because he thought that he would be fired and because he could not afford medical treatment. Plaintiff testified that Blondie Lafrance asked him to say that he was not hurt so she could tear up the paperwork. He stated that no one would send him to a doctor. Plaintiff and his wife, Barbara, testified that, when he got home the evening of the accident, he was suffering from pain in his neck and back. Barbara Lafrance said that he used a heating pad every evening after the accident. Plaintiff said he never went to see a doctor because he had no money. However, he admitted that he went to the charity hospital in Houma after he was fired and that his treatment there was free. Additionally, he stated that he did not have money to put gasoline in his car to go to the hospital.
Since he first sought treatment in Houma, plaintiff has seen several |sdoctors. Tests indicated that he has possible herniated discs in his neck and back. Plaintiff asserts that he was told not to work, but is trying to find light work because he has no income. He is currently receiving physical therapy and takes medication. Plaintiff was 55 years old on the date of trial.
Several witnesses testified for the defense. Blondie Lafrance testified that plaintiff reported the accident to the car insurer and that she spoke to the representative on the phone shortly after plaintiff arrived back at the shop following the accident. Blondie Lafrance testified that plaintiff told her that he was not hurt when she was on the phone with State Farm. She stated that it was company policy to send a worker to the doctor if they were injured on the job. She denied instructing him to say that he was not hurt. Blondie Lafrance stated that plaintiff would not have been fired for going to the doctor. In fact, the company has a line of credit with West Jefferson Hospital for on-the-job injuries. She testified that plaintiff continued to work for two weeks and neither looked like he was working in pain nor asked for medical help. He continued to perform all of his duties without complaining that he was in pain.
Joe Lafrance and co-workers, Craig Sierra and David Bourgeois, testified the same. Bourgeois, plaintiff’s supervisor, further testified that when he (Bourgeois) suffered an eye injury, Blondie and Joe Lafrance sent him to the hospital. He said that it was policy to send injured workers to the doctor. This was supported by Sierra, who stated that he knew of other incidents in which the injured employee was sent to the doctor. Bourgeois further said that plaintiff told him about the accident, told him he was not hurt and never asked to see a doctor. He confirmed other testimony that there was no damage to the truck. Both Bourgeois and Sierra testified that | (¡plaintiff did not indicate he was in pain that day or in the two weeks following the accident. In addition, Joe Laf-rance, Sierra and Bourgeois testified that they passed plaintiff’s home on the way to work and on a couple of occasions saw him working on his car and cutting grass with a weed eater.
Jack Lyons was working for Joe Lafrance at the time of trial. He was a customer at the time of the accident and saw plaintiff on a regular basis. Lyons testified that plaintiff told him about the accident. He stated that plaintiff performed his duties as usual, without any indication that he was in pain. He said that plaintiff was normally a little sour and that his attitude did not change after the accident.
Plaintiff was fired on June 30, 1995. On that day, plaintiff became angry with Sierra who was working in the shop and accidentally splashed plaintiff with a few drops of paint. Sierra apologized, but plaintiff lost his temper. He screamed at Sienna and used foul language. Plaintiffs supervisor, Bourgeois, told him to calm down and when plaintiff would not, told him to go home for the day. Plaintiff telephoned his brother at the other shop, telling him that Bourgeois had fired him. His brother came over to mediate *1030 the dispute, but plaintiff was “out of control” and would not calm down. Joe Lafranee then fired plaintiff because of his conduct and language. Plaintiff did not deny that this was the reason he was fired.
In a workers compensation action, plaintiff bears the burden of establishing the causal connection between the disability and the accident by a reasonable preponderance of the evidence. Quinones v. U.S. Fidelity and Guar. Co., 93-1648 (La.1/14/94), 630 So.2d 1303, 1306-07; Cochennic v. Dillard’s Dept. Store Warehouse, 95-705 (La. App. 5th Cir. 1/17/96); 668 So.2d 1161, 1166; writ denied, 96-C-0419 (La.3/15/96); 669 So.2d 417. There is a legal presumption that the accident caused the disability when an employee proves that before the accident the injured person was in good health, but commencing with the accident the symptoms of the disabling condition appear and continuously manifest themselves after-wards, providing that there is sufficient medical evidence to show there to be a reasonable possibility of causal connection between the accident and the disabling condition. Quinones v. U.S. Fidelity and Guar. Co., 630 So.2d at 1307; Cochennic v. Dillard’s Dept. Store Warehouse, 668 So.2d at 1166. The medical testimony “must be weighed in the light of other credible evidence of a nonmedical character, such as a sequence of symptoms or events in order to judicially determine probability ...” Schouest v. J. Ray McDermott & Co., 411 So.2d 1042, 1044-45 (La.1982); Hammond v. Fidelity & Cas. Co., 419 So.2d 829, 831 (La.1982). After an employee successfully “establishes the presumption of a causal relationship, the party denying the existence of a presumed fact assumes both the burden of producing evidence and the burden of persuasion on the issue.” Quinones v. U.S. Fidelity and Guar. Co., 630 So.2d at 1307; Cochennic v. Dillard’s Dept. Store Warehouse, 668 So.2d at 1165. Additionally, the appellate court’s review is governed by the manifest error or clearly wrong standard. Smith v. Louisiana Dept. of Corrections, 93-1305 (La.2/28/94), 633 So.2d 129, 132; Cochennic v. Dillard’s Dept. Store Warehouse, 668 So.2d at 1161.
The medical evidence shows that plaintiff went to the hospital in Houma on July 20, 1995, where an examination showed tenderness in his back. He did not complain of neck discomfort. He was then seen by Dr. A.Z. Blamphin, a general practitioner, complaining about neck and back pain. Plaintiff told Dr. Blamphin that he had headaches immediately after thejgaceident. The examination indicated limited range of motion, tenderness and tightness. The doctor diagnosed a cervical and lumbar sprain based on plaintiffs subjective complaints. He prescribed physical therapy and Soma 350 and restricted plaintiff to light work. In his July 31st report, Dr. Blamphin suggested that plaintiff not return to work. He ordered X-rays which were taken on July 27,1995. According to the doctor’s deposition testimony, the X-rays showed degenerative disc pathology of the fifth cervical disc and the lumbar spine. He testified that these findings preceded the accident. He stated that the accident could have mildly aggravated the condition, but he could not correlate the pain in the area of plaintiffs complaint to the area of the degenerative condition. Although he found tightness, he stated that it seemed to be voluntary. He did not find any spasms.
In August of 1995, the complaints were the same and the treatment of hot packs, physical therapy and medications was continued. Plaintiff did not ask for a work slip to keep from working. This continued in September and October. His neck was still restricted from pain complaints and he was tender in the neck and back. In November of 1995, plaintiff complained about numbness in both legs and left arm. Because of these new complaints, Dr. Blamphin recommended that plaintiff see an orthopedist.
In January of 1996, plaintiff was seen by Dr. Andrew Kucharehuk, an orthopedic surgeon, who diagnosed a possible herniation at the L5-S1 and C5-6 and agreed that plaintiff was not able to work. He recommended a Magnetic Resonance Imaging Test (MRI) and an Electromyograph (EMG) and prescribed medications. The MRI showed that plaintiff had chronic hypertrophic spondylo-sis at C5-C6 productive of significant narrowing of the right and possible left neural foramina. The lumbar spine showed a bulg *1031 ing 19of L5-S1, L4-5 and T12-L1. Dr. Ku-charchuk diagnosed plaintiff with a herniated disc at L5-S1 and C5-C6. He suggested that plaintiff see a neurosurgeon. The doctor treated plaintiff from January through July of 1996, found a 15% whole body disability from degenerative disc disease of the cervical and lumbar spine and found that, by the history given, the conditions were related to the accident.
Plaintiff saw Dr. Toussaint Leclereq, a neurosurgeon, on February 28, 1996. In his report, Dr. Leclereq noted neck spasms and pain. The doctor recommended a myelo-gram, following which plaintiff should return to his office. Neither a deposition nor other reports by Dr. Leclereq were introduced into evidence.
After plaintiff filed his workers compensation claim, upon defendant’s request, plaintiff was examined by Dr. Gordon Nutik, an orthopedic specialist. Dr. Nutik examined plaintiff in August of 1995 and again in July of 1996. He noted in both reports that plaintiff exhibited “self-limitation” of his neck and low back motion and the clinical examinations revealed inconsistencies concerning the neck and back findings. In his first report the doctor stated that he felt concerned that “the patient is exhibiting subjective complaints which are out of proportion or non-organic in nature.” After reviewing plaintiffs X-rays, the doctor stated that they revealed degenerative changes in the cervical and lumbar spine and greater osteoporosis than expected in a 53 year old man. In his first report, he stated that the changes pre-existed the accident. In the second report, the doctor noted that the MRI showed degenerative changes in the neck and back, but no disc herniations which could be related to the accident. In his deposition, Dr. Nutik stated there were inconsistencies that indicated plaintiff could move his neck better 110than he was doing in the examination and that he would have expected the symptoms of a disc injury to manifest before twenty-one days from the accident. In this case, plaintiff did not report the neck pain when he went to the hospital in Houma. However, the doctor did feel that there was some restrictions in the back area, even though there were inconsistencies. Dr. Nutik testified that he would relate the restrictions in plaintiffs back to the accident, but not the cervical complaints. Dr. Nutik stated that someone with his degree of complaints would have difficulty cutting grass or driving. He concluded that plaintiff should undergo an aggressive program of exercises to improve his range of motion and get off the medications so he can become active. He recommended sedentary work because of the pre-existing arthritis, but felt that he could improve that activity level since he had no disc herniations. Dr. Nutik agreed that an accident could aggravate the pre-existing condition, but stated the reaction should start right away.
In this ease, the hearing officer found that an accident occurred and that it arose out of plaintiffs employment with defendant. However, she also found that the medical evidence did not support plaintiffs claim that the injuries were related to the accident. She stated that all the physicians that examined plaintiff in close proximity to the accident noted either no neck complaints or no complaints in the area of degeneration. He also failed to explain the failure of mechanical problems to manifest as expected “right from the start.” Although plaintiff and his wife contended that he suffered pain right from the start, the other witnesses asserted that he showed no indication of working in pain. Further, plaintiff failed to adequately explain why he did not seek medical treatment sooner. Although some of the doctors found his medical condition was caused by the accident, they were lurelying on plaintiffs description of the accident. Weighing the medical testimony in the fight of the credible non-medical evidence, such as the sequence of symptoms and events, we find the hearing officer was not clearly wrong in determining that plaintiff failed to prove the neck and back problems were caused by the accident. See: Schouest v. J. Ray McDermott & Co., 411 So.2d at 1044-45; Hammond v. Fidelity & Cas. Co., 419 So.2d at 831.
Accordingly, the judgment of the hearing officer is hereby affirmed. Costs of appeal are assessed against plaintiff.

AFFIRMED.

. Converters hold the fluid for engine transmissions.

. Joe Lafrance is the owner of two businesses. Custom Built and Custom Built Transmission.